BEATTIE *v*. SMITH.

Opinion delivered December 20, 1920.

1. FRAUDS, STATUTE OF—PART PERFORMANCE.—Where the vendor of standing timber received payment and the purchaser entered into possession, this took the contract out of the statute of frauds, though it was oral.

2. LOGS AND LOGGING—TIME FOR REMOVAL OF TIMBER—JURY QUESTION.—In an action for damages for selling to third persons timber previously sold to plaintiffs, the issue whether defendant had limited the right of removal to six months, being raised by the pleadings, was properly submitted to the jury.

3. LOGS AND LOGGING—REASONABLE TIME FOR REMOVING TIMBER.—In determining what is a reasonable time for removing timber where no time is specified in the contract of sale, the criterion

is not the facilities which the purchasers had for removing the timber, but those which in the exercise of ordinary care they could and should have had to enable them to cut and remove the timber within a reasonable time.

4. LOGS AND LOGGING—REASONABLE TIME FOR REMOVING TIMBER.—In determining the question of a reasonable time for removing timber, it is proper to take into consideration the location of the land, its accessibility, the character and quantity of timber thereon, the reasonableness of the weather, the facilities obtainable for cutting and removing the timber, and all other conditions and circumstances which might affect the cutting and removing thereof.

Appeal from Crittenden Circuit Court; R. H. Dudley, Judge; reversed.

Rudolph Isom, for appellant.

1. The court erred in its instructions to the jury. Nos. 1, 2 and 3 are erroneous, but No. 4 is especially objectionable and prejudicial. So is No. 10. An erroneous instruction is presumed to be prejudicial. 70 Ark. 79; 110 Id. 557; 64 Id. 505; 72 Id. 31. The instructions were contradictory. 83 Ark. 202. Plaintiff should have removed the timber within a reasonable time, and in that connection the "facilities" which he might have for performing the contract could not justly be taken into consideration by the jury as instructed by the court. Inconvenience or cost of compliance do not excuse a party from performing a contract that is possible and lawful. 6 R. C. L. 997.

2. A definite time was specified in which to cut and remove the timber. 93 Ark. 10, par. 3; Ib. 447. The court had no right to instruct the jury that they could take into account the question of labor in determining whether or not the timber was cut in a reasonable time. Where there is no time specified for the removal of timber, then such right only continues for a reasonable time. 77 Ark. 117, 408; 84 Id. 603; 91 Id. 292; 93 Id. 5. See, especially, 99 Ark. 112-16.

3. The court also erred in refusing a continuance when it developed that two other persons were interested in the litigation.

4. It was error to give instruction No. 10. The burden of proof is on the party holding the affirmative of the issue. 27 Ark. 500.

5. A verdict should have been directed for defendant at the conclusion of plaintiff's testimony. The testimony discloses the uncontradicted fact that eight or nine weeks was a reasonable time in which to cut and remove the timber from the land and there is no evidence showing the description of the timber.

*L. C. Going,* for appellee.

There is no error in the instructions 1, 2 and 3, and No. 4 was not prejudicial. The jury were extremely lenient with appellant in the matter of damages. There was no error in giving No. 10.

Only a question of fact was raised by the testimony whether or not appellee had a reasonable time within which to remove the timber. The issues were decided against the appellant, and the verdict is conclusive on appeal.

WOOD, J. On July 23, 1918, ˌappellant sold to one Whittington, who was a partner of the appellees, Smith and Weaver, all the timber situated on a certain brake north of the town of Earle, in Crittenden County, for the sum of $225. Under the direction of Whittington, appellant told appellee, Smith, of the sale, and at appellant's request, Smith gave appellant a check for $225, the purchase price of the timber. On the check were written the words: "For timber in brake north side of Earle." Appellant cashed the check, and in a few days thereafter appellee took possession of the brake and began cutting and moving the timber. He continued to do so until about the first of October and removed between twenty and fifty thousand feet of timber before he stopped work. The following January the appellant sold the timber to Wallin & Watson for $1,000 without notifying Whittington or the other appellees. In August, 1919, appellee, Smith, not knowing the timber had been

sold by appellant, sent a force of employees to continue the operation of cutting and removing the timber. Appellant forbade them. On April 3, 1920, the appellee Smith brought this action against appellant for damages for breach of the contract. He alleged his purchase of the timber as above set forth, his payment of the purchase price and taking possession of the same as above mentioned. He alleged further that no particular time had been fixed for the removal of the timber, and under the contract he had a reasonable time within which to remove the timber, and that appellant by selling the timber to the other parties had violated his contract with appellee, Smith, to the latter's damage in the sum of $5,000, for which he asked judgment.

The appellant answered and admitted all the allegations of the complaint except that he denied that no time had been fixed for the removal of timber, and alleged that he had given appellee six months in which to cut and remove same; that the time given had expired, and appellant therefore had the right to sell the timber to other parties. The appellee, Smith, testified that he, Whittington and Weaver were partners in the timber business, and they had bought this timber from appellant. When the fact was developed that Whittington and Weaver were partners of appellee Smith, appellant moved to make Whittington and Weaver parties plaintiff, which motion was granted. Continuing his testimony, Smith described the timber, and stated that there were between 75 and 100 acres which came up to the corporation line of the town of Earle. He testified that nothing was said as to the time for the removal of the timber except when he gave appellant the check, he told appellant that he absolutely would not be in appellant's way. With that exception the timber was to be appellee's until they got it off. There were three or four hundred thousand feet of timber on the land. They cut between 20,000 and 50,000 feet which they hauled to Balch's sawmill. The timber was only about 400 yards

from corporate limits. They bought the timber July 23, and it was dry weather from that time on until about October 1, when it began to rain. "Witness had two teams equipped for hauling and also an outfit rented from Whittington. It would have taken five or six months working time with no delays and working four teams to remove the timber. They didn't work every day because they couldn't get the sawyers.

Whittington testified that the appellant did not fix any time in which they were to get the timber out, and that he and Smith and Weaver were partners in the timber business.

Wallin testified that he bought timber from appellant in January, 1919, and paid him $1,000 for it. He estimated the timber on the brake at 200,000 feet. The logging conditions were good in July, August and September of 1918. Two or three teams ought to have removed the timber in two months' time. Witness worked for a week or ten days in February, 1920, and got out about 40,000 feet.

Another witness by the name of Johnson testified to the same effect as to weather conditions and as to the time required for the removing of the timber with two teams; that a reasonable time for the removal of the timber was eight or nine weeks, and same could have been done in 1918. The timber was not over a mile from the mill. After Wallin bought the timber, witness worked in the brake four weeks practically every day, cutting timber, and during that time neither Smith, Whittington or Weaver ever came over there. The timber was so close to town it could have been seen falling. Neither of the appellees ever said anything to witness about cutting timber down. Appellees could have hauled the timber out in July. They could have got the timber from the 1st of July until the 15th of November, when it set in raining.

Appellee Smith, recalled, stated he did not know when Johnson was cutting timber on the land, but saw

appellant a week or so later and said something to him about it. Appellant replied that the time had expired and he did not consider he had sold the timber to him (Smith); that he had sold it to Whittington. He further stated that nothing was said by appellant about giving six months' time to get the timber off. No time limit was fixed.

The appellant testified he had sold the timber to Whittington, and at the time Whittington bought the timber he told him he would have six months in which to remove the same, and he said, "All right." It was a bad brake. It was dry weather, August, September and October, 1918. There were 200,000 feet of timber in the brake. Witness sold the timber to Whittington on July 23, 1918, and witness didn't cut any timber from the land thereafter until August 30, 1919. Witness sold the timber to Wallin January 28, 1920. When witness received the check, there was nothing on it showing what it was given for.

Among others, the court gave the following instruction, over the objection of the appellant:

"No. 4. If the jury finds there was no time agreed upon within which to cut and remove the timber, then the plaintiffs would have a reasonable time after July 23, 1918, within which to cut and remove the timber. And by reasonable time is meant such time as a man of ordinary care and prudence would be allowed to take under the circumstances; and in determining that you ought to take into consideration all the facts and circumstances, the character of the ground, the character and quantity of timber, the facilities of the plaintiffs for cutting and removing it, and all the facts and circumstances in evidence in determining what is a reasonable time, and whether or not plaintiffs should have gotten the timber out within that time."

The jury returned a verdict in favor of appellees for the sum of $1,000. Judgment was entered for them in that sum, from which is this appeal.

The appellant did not deny that he had sold to Whittington the tract of timber land in controversy. On the contrary, he admitted that Whittington had paid the purchase money and had taken possession of the land pursuant to the contract. This testimony was sufficient to take the contract out of the statute of frauds, and the court did not err in submitting to the jury the issue as to whether or not the appellant had limited appellee's right to remove the timber in a period of six months. This issue was expressly raised by the pleadings. The court erred in telling the jury that, in determining whether or not the plaintiffs had cut and removed the timber within a reasonable time, "the facilities of the plaintiffs" for cutting and removing it should be taken into consideration. The appellees did not prove that appellant knew what facilities were possessed by the appellees for the removal of the timber at the time the same was sold, nor that the sale was made in contemplation that appellees would use only the facilities they then possessed. The evidence shows that the plaintiffs had only three teams at work in removing the timber, and appellee Smith testified that, with no delays and four teams, it would have taken five or six months working the whole time to remove the timber; that working with the facilities the plaintiffs had during over two months of good weather, they had got out about 50,000 feet of timber. On the other hand, after the timber was sold to Wallin, he worked during the month of February, 1920, and got out 40,000 feet. This plainly shows that the facilities of the plaintiffs was not a proper criterion to be taken into consideration. The appellees did not show that by the exercise of ordinary care they could not have provided themselves with better facilities than they had. Such was their duty if they could have done so by the exercise of reasonable diligence. The appellees had no right to prolong the time by failing to exercise ordinary care and prudence to provide themselves with the necessary facilities to remove the timber in a reasonable time, consider-

ing all the circumstances and conditions affecting the removal of the timber. It was not the facilities which the appellees had, but those which in the exercise of ordinary care they could and should have had to enable them to cut and remove the timber within a reasonable time.

In *Burbridge* v. *Ark. Lumber Co.,* 118 Ark. 94-109, we said: "In determining the question of reasonable time, it was proper to take into consideration the location of the land, its accessibility, the character and quantity of timber thereon, the seasonableness of the weather, and the facilities for cutting and removing the timber, and all other conditions and circumstances which might affect the removal thereof." Citing *Earl* v. *Harris,* 99 Ark. 112; *Liston* v. *Chapman & Dewey Land Co.,* 77 Ark. 116; also *Fletcher* v. *Lyon,* 93 Ark. 10; *Ingham Lumber Co.* v. *Ingersoll,* 93 Ark. 447; 6 R. C. L. 997, and other cases cited in appellant's brief.

We find no other reversible error in the record. For the error indicated, the judgment is reversed and the cause is remanded for a new trial.