WILKINSON v. JAMES.

Opinion delivered May 5, 1924.

1. MORTGAGES—WAIVER OF REDEMPTION.—Under Crawford & Moses' Dig., § 7411, when a mortgage or deed of trust contains a waiver of the right to redeem, a decree of foreclosure cuts off the right of redemption, although not so declared in the decree.

2. LOGS AND LOGGING—SALE OF TIMBER.—Where a deed reserved the timber rights, and, after the time limit for cutting the timber expired, the vendor foreclosed a purchase-money mortgage and purchased the land, his subsequent sale of the timber to defendant conveyed title thereto superior to that of plaintiff, to whom he subsequently deeded the land.

3. FRAUDS, STATUTE OF—PART PERFORMANCE.—A verbal contract to sell timber was taken out of the statute of frauds by the purchaser entering and proceeding to cut and remove the timber, and paying for it as cut.

4. EVIDENCE—OPINIONS OF EXPERTS.—In an action for accounting for timber cut, the uncontradicted testimony of expert witnesses as to the value of timber in a certain river bottom is admissible though they never saw the timber involved in the action.

Appeal from St. Francis Chancery Court; *A. L. Hutchins,* Chancellor; reversed.

*W. J. Lanier,* for appellant.

In order for one to maintain an action of trespass to realty he must either have actual or constructive possession. 65 Ark. 600. To maintain the action appellee must show that she is the owner of the land upon which the trespass occurred. 1 Ark. 448; 8 Ark. 470; 14 Ark. 433; 44 Ark. 74; 26 Ark. 505; 76 Ark. 428; 85 Ark. 208.

*Daggett & Daggett,* for appellee.

McCULLOCH, C. J. This is an action instituted by appellee against appellant in the chancery court of St. Francis County to have an accounting of timber cut on a tract of land alleged to be the property of appellee, and to recover the value of the timber. There was a trial of the cause on the pleadings and proof adduced, which resulted in a decree in favor of appellee for the value of the timber in controversy, which the court found to be twelve hundred dollars.

The material facts of the case are undisputed. There is a conflict as to the value of the timber cut and removed by appellant, but the conclusion which we have reached with reference to appellant's liability renders the conflict as to the value of the timber immaterial.

The land in question (a section of land in St. Francis County containing six hundred and forty acres) was originally owned by E. A. Rolfe and J. F. McDougal, who sold and conveyed the same to W. J. Moore by deed dated August 22, 1916, containing a reservation of the timber rights in the following language: "It being agreed and understood that E. A. Rolfe and J. F. McDougal reserve the right to cut and remove the timber on the above described land until January 1, 1918." The nominal sum of ten dollars was paid on the consideration, and Moore executed to Rolfe and McDougal a mortgage on the land to secure the payment of the purchase money, $3,840, evidenced by installment notes. The mortgage contained a clause expressly waiving the right of redemption under the statute. Moore sold and conveyed the land to appellee, Mrs. James, by deed executed September 2, 1916, for the same consideration as expressed in the deed to him from his grantor. The deed recited a consideration of ten dollars, paid, and the assumption of the debt described in the mortgage from Moore to Rolfe and McDougal. The deed also recited that the conveyance was made "subject to certain timber right mentioned in deed to the said W. J. Moore, recorded in book 74, page 53, of the recorder's office in Forrest City, St. Francis County, Arkansas." No part of the mortgage debt to Rolfe and McDougal was paid, and they instituted an action in the chancery court to foreclose the mortgage. A foreclosure decree was rendered on August 20, 1918, and the land was ordered sold by a commissioner of the court. The sale was made on November 1, 1918, and Rolfe and McDougal became the purchasers, the sale was reported, and approved by the court, and deed was made under orders of the court.

On September 11, 1919, Rolfe and McDougal conveyed the land to appellee for a cash consideration of $4,356.46, the deed containing the following recital: "This deed is executed for the purpose of perfecting a redemption of above land from a sale to grantors herein under a decree of the St. Francis Chancery Court, rendered July 20, 1918, in the case of E. A. Rolfe, J. F. McDougal and Eugene Williams, trustee, *v.* W. J. Moore and Alma M. James, the consideration named above being the amount of the judgment, interest and costs in said case."

Prior to January 1, 1918, Rolfe and McDougal entered into an arrangement with appellant to cut and remove the timber from the land, and, pursuant to this arrangement, appellant entered upon the land and cut and removed a large quantity of timber prior to the date mentioned above. This was done under the reservation recited in the deed from Rolfe and McDougal to Moore, and the timber cut at that time is not involved in the present controversy. Appellant quit cutting timber on the expiration of the time limit of the timber reservation (January 1, 1918), but, after Rolfe and McDougal received their deed from the court's commissioner in November, 1918, they made a new contract with appellant whereby they sold him the timber on the land for the purpose of making railroad ties, at the price of ten cents per tie. The contract of sale was verbal. The evidence in the case shows that the timber on the land was small and inferior, and was only valuable for that purpose.

Under the new contract of sale appellant entered upon the land and cut 1,790 railroad ties, of which 343 were cut subsequent to the date of the conveyance by Rolfe and McDougal to appellee, but appellant had no actual notice of that conveyance until after he had cut the timber. The trial court held appellant liable for the value of all of the 1,790 ties. The theory upon which appellant was held liable for the timber is that appellee had the statutory right of redemption of the land for one year after the date of the foreclosure sale, that Rolfe

and McDougal and their vendee, the appellant, were in possession as mortgagees after that sale, and were liable for the value of the timber cut during that time. Counsel for appellee defend the decree on that ground, but we are of the opinion that the theory is unsound and is not justified by the law governing the redemption rights of a mortgagor. The governing statute on that subject reads as follows:

"Section 7411. In all cases where real property is sold under an order or decree of the chancery court, or a court exercising chancery jurisdiction in the foreclosure of mortgages and deeds of trust, the mortgagor, his heirs or legal representatives, shall have the right to redeem the property so sold at any time within one year from date of sale, by the payment of the amount for which the property was sold, together with interest thereon at the rate borne by the decree or judgment, and the cost of foreclosure and sale; provided, that the mortgagor may waive such right of redemption in the mortgage or deed of trust so executed and foreclosed * * *." Crawford & Moses' Digest, § 7411.

It is not contended that the waiver of the right of redemption is unenforceable, but the contention of counsel is that the decree of the court did not, in terms, cut off the right of statutory redemption after sale, and that this was essential in order to effectuate the waiver and to preclude the mortgagor's right of redemption. We cannot agree to that view of the law, for there is nothing in the statute which, either in express terms or by implication, requires an adjudication by the court in its foreclosure decree of the waiver of redemption. When the mortgage or deed of trust contains the waiver, and the court renders a foreclosure decree, the right of redemption is gone by operation of the statute. In other words, the right of redemption after the sale is determined by the question whether or not there was in fact a waiver of the lien in the mortgage, and not by a recital of the waiver in the decree. It follows therefore that appellee had no right of redemption from the mortgage

sale. The fact that the purchasers at the sale, Rolfe and McDougal, executed to appellant a deed of conveyance, containing a recital recognizing that appellee had the right of redemption, does not affect the rights of appellant as the purchaser of the timber prior to the execution of that deed. If there was in fact no right of redemption, Rolfe and McDougal were the owners of the timber, and their sale to appellee of the timber conveyed a superior title over the subsequent conveyance of the land to appellee. Nor can there be any distinction made as to the question of appellant's liability between the timber cut before and that cut after the date of the conveyance by Rolfe and McDougal to appellee. The sale was verbal, but the question of the statute of frauds has not been raised either by special or general plea. However, if any such question had been raised, a sufficient answer to it is that the contract of sale was taken out of the operation of the statute of frauds by the fact that appellant entered into possession of the land and the timber and proceeded to cut and remove the timber, paying for it as cut. *Carnahan* v. *Terrall Bros.,* 137 Ark. 407; *Beattie* v. *Smith,* 146 Ark. 532.

The contract of sale having been made prior to the deed to appellee, and there having been part performance under continuous occupancy in the removal of the timber, appellant's right to the timber under his purchase could not be taken away by a subsequent conveyance made by his grantors to another.

Our conclusion is that, under the undisputed facts of the case, appellant is not liable for any of the timber cut, so the decree is reversed, and judgment will be entered here dismissing the complaint of appellee. It is so ordered.

McCULLOCH, C. J., (on rehearing). On the original consideration of this case we overlooked a stipulation of counsel narrowing the issues in the case solely to the ascertainment of the amount and value of the timber cut on the land by appellant and conceding the liability of

appellant for the reasonable market value of the timber. The stipulation reads as follows:

"That therefore the sole questions to be determined by this court in this action are as follows: '(a) The amount of timber, if any, cut and removed by the defendant, C. M. Wilkinson, or his agents, subsequent to the first day of January, 1918, and for the amount so cut and removed as may be found by the court, it is admitted that the defendant is liable to the plaintiff for the reasonable market value thereof at the date of removal; (b) the reasonable market value of such timber, if any, cut and removed by the defendant from said land subsequent to January 1, 1918; (c) whether or not the defendant, C. M. Wilkinson, or his agents by his direction, entered in and upon said lands and cut and removed such timber, if any, without color of right, title or authority so as to render the said C. M. Wilkinson liable to the plaintiff for treble damages by reason of the trespass, if any, committed by him.' "

Reference was made to this stipulation in the original brief of appellee, but we overlooked it, and determined the case upon another question. We turn, then, to the question presented in the stipulation as to the amount and value of the timber.

It is not contended that appellant was a wilful trespasser so as to render him liable for treble damages, and the contention of counsel for appellee is that appellant should only be liable for the value of the timber at the time it was cut, *i. e.*, what timbermen call "stumpage value."

There is really no dispute as to the amount of timber cut by appellant—1,790 railroad ties—and the court based its finding on the value of that quantity of timber. According to the computation made by counsel for appellee, that number of cross-ties would amount, at thirty-two feet board measure per tie, to 57,280 feet. Appellant and witnesses introduced by him testified that the timber was only fit for making ties, and that the fair market value of the stumpage was ten cents per tie. Appellant intro-

duced no witness whose testimony tended to fix the price of the timber for manufacturing lumber. On the other hand, all of the testimony adduced by appellee tended to fix the price of the timber as saw-timber and not as tie-timber. Two of the witnesses introduced by appellee—the two witnesses on whose testimony the court appears to have based its finding—never saw the timber, but merely testified as experts concerning the value of saw-timber in L'Anguille River bottom. The testimony of these two witnesses is not contradicted, and must be accepted as true, but other testimony in the case shows that this timber was not situated in the L'Anguille River bottom, and that it was not fit for saw-timber—the greater portion of it, at least. Appellant and another witness introduced by him testified that this timber was not fit for saw-timber, and was only fit for making ties, but another witness introduced by appellant—Patterson by name—testified that this timber would average in size from twelve inches up to eighteen to twenty inches, and that the larger size used in making ties was from ten to twelve inches.

We are convinced that the court's finding as to the value of the timber is not sustained by a preponderance of the evidence, for the testimony of Houck and Yancey, the two witnesses on whom appellee relies, does not justify a finding of a $1,200 valuation. They testified that the value of saw-timber on L'Anguille River bottom was twelve dollars to fifteen dollars per thousand feet, board measure. At twelve dollars per thousand feet the aggregate value would be $687.26, and a finding as to this amount would be excessive in view of the uncontradicted testimony that much of this timber, if not all of it, was unfit for manufacturing lumber.

The difficulty in arriving at the value of the timber arises from the fact that one side bases its estimate entirely on tie-timber, and the other side bases its estimate of value entirely on its being saw-timber, whereas the proof shows that much of it was only fit for making ties. E. A. Rolfe, who formerly owned the land, and who,

together with McDougal, sold the timber to appellant, testified as a witness in the case, and he places the value at ten cents per tie as tie-timber, but he also testified that, before he made the trade with appellant, he offered to sell all the timber at a lump sum of $500. The clear inference from his testimony is that he considered the value of the timber to be $500, but that it was only worth ten cents per tie when used for making railroad ties. It becomes necessary to reconcile the conflicting statements of the witnesses so as to arrive at some just measure for ascertaining the value of the timber cut, and we have concluded that Rolfe's estimate of $500 is about the proper amount to fix. It would not be fair to estimate all of the timber at the value fixed by Houck and Yancey for saw-timber, nor would it be fair to fix it on the basis of the price of tie-timber, for, as before stated, the evidence shows that some of it was fit for saw-timber.

The motion for rehearing will therefore be sustained, and the judgment will be modified by reducing the amount of recovery in favor of appellee down to the sum of five hundred dollars, to bear interest as prescribed in the decree below. It is so ordered.